**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:21-cv-166-MOC**

| | |
|---|---|
| HEATHER KATHLEEN GUNN, | ) |
| | ) |
| | ) |
| Plaintiff, pro se, | ) |
| | ) |
| vs. | ) |
| | ) |
| | )    **ORDER** |
| | ) |
| BRANDON PADGETT, | ) |
| N.C. State Highway Patrol Trooper, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Defendant Brandon Padgett's Motion for Summary Judgment. (Doc. No. 39). For the following reasons, the Court **GRANTS** Defendant's summary judgment motion and dismisses this action with prejudice.

## I.   BACKGROUND

### A.  PROCEDURAL BACKGROUND

On June 23, 2018, Trooper Brandon R. Padgett executed an "arm-bar takedown" on Heather K. Gunn, who he suspected of drunk driving. (Doc. No. 40). Three years later, on June 23, 2021, Ms. Gunn brought this civil claim under 42 U.S.C. § 1983, naming Trooper Padgett as the defendant and alleging violations of her Fourth and Eighth Amendment rights. (Doc. No. 1).

On May 22, 2023, Defendant Padgett submitted his Motion for Summary Judgment (Doc. No. 39). In that motion and attached memorandum of law, Trooper Padgett asserted that Ms. Gunn failed to produce evidence supporting her claim that Padgett used excessive force in violation of the Fourth Amendment. (Doc. Nos. 39, 40). Defendant Padgett further raised the

affirmative defenses of sovereign and qualified immunity. (Doc. No. 40). On June 9, 2023, Plaintiff Gunn submitted her Brief in Partial Response to Defendant's Motion for Summary Judgment. (Doc. No. 43). This Court held a hearing on Defendant's Motion for Summary Judgment on September 5, 2023. At that hearing, the Court reviewed footage of the incident captured on Trooper Padgett's dash camera. (Doc. No. 42 Exhibit A). This matter is now ripe for disposition.

### B. FACTUAL BACKGROUND

On June 23, 2018, Plaintiff Gunn was driving on North Carolina Highway 28 in Macon County, North Carolina, when she lost control of her vehicle and slid into a ditch near Carl Sorrells Road. (Doc. No. 1). Trooper Padgett was dispatched to the scene of the incident, and arrived as Plaintiff was being evaluated by EMS. Given the circumstances of the single-vehicle crash, along with Plaintiff Gunn's confused responses to EMS' questions, Defendant Padgett began to suspect that Plaintiff had been driving while impaired when the wreck occurred. (Doc. No. 40). Plaintiff Gunn attributes her confusion to head injuries suffered in the collision, which was violent enough to flip her vehicle and knock off her shoes. (Transcript of Hearing on Defendant's Motion for Summary Judgment).

Trooper Padgett requested that Ms. Gunn submit a breath sample on his portable breath instrument. (Doc. No. 40). This first sample was positive for alcohol. Defendant Padgett then asked Plaintiff Gunn to perform field sobriety tests, which he claims she failed. (Id.). Defendant Padgett unsuccessfully attempted to take a second breath sample. (Id.).

Defendant Padgett decided to arrest Plaintiff Gunn for Driving While Impaired after aborting his attempt to obtain a second breath sample. (Doc. No. 40). A struggle ensued. (Transcript of Hearing on Defendant's Motion for Summary Judgment). Plaintiff repeatedly

refused to turn around and allow Defendant to cuff both of her wrists. (Doc. No. 42 Exhibit A). Defendant grabbed Plaintiff's right hand, turned her around, and forced her towards the front right quarter panel of his patrol car outside the view of his dash camera. (Doc. No. 40; Doc. No. 42 Exhibit A). The audio captured by Trooper Padgett's dash camera indicates that Ms. Gunn continued to resist Defendant Padgett for around 60 seconds despite his continued demands that Plaintiff surrender her wrists. (Doc. No. 42 Exhibit A). After roughly one minute of resistance, Trooper Padgett warned Ms. Gunn that he would "put her on the ground." (Id.). Defendant subsequently "performed a quick arm-bar takedown technique and took Plaintiff to the ground," again out of view of the dash camera. (Doc. No. 40). Following the takedown, Defendant drove his knee into Plaintiff's back and finished applying his handcuffs. (Doc. Nos. 1, 40). While on the ground, Ms. Gunn apparently disobeyed Trooper Padgett's orders to "stop moving" and became verbally abusive. (Doc. No. 42 Exhibit A). Trooper Padgett kept Ms. Gunn on the ground for more than five minutes. (Doc. No. 42 Exhibit A; Transcript of Hearing on Defendant's Motion for Summary Judgment).

The parties disagree about the injuries Trooper Padgett caused to Plaintiff Gunn during and after the takedown. Defendant Padgett contends that Plaintiff Gunn suffered only "several scratches and a cut near her right eye." (Doc. No. 40). Plaintiff Gunn, however, claims to have suffered a black eye, concussion, cuts and scrapes on her face and body, bruises and swelling on her face, breasts, legs, and back, and damage to her teeth from Defendant Padgett's initial takedown, as well as herniation to disc L4-L5, sciatica, nerve damage, and numbness caused by Defendant Padgett driving his knee into her back following the takedown. (Doc. No. 1).

After Ms. Gunn's arrest, a Macon County Sheriff's Office Deputy transported her to the Macon County jail. Plaintiff was charged with Driving While Impaired, Reckless Driving,

Failure to Maintain Lane Control, and Resist/Delay/Obstruct. (Doc. No. 40). All of the charges were dismissed, with the exception of the resisting charge, to which Ms. Gunn pled no contest.

## II. STANDARD OF REVIEW

Defendant's motion for summary judgment must satisfy the two-prong test articulated by the Federal Rules of Civil Procedure. Summary judgment is granted where the movant (1) "shows that there is no genuine dispute as to any material fact" and (2) demonstrates that they are "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is a fact that could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

On a motion for summary judgment, the burden of persuasion lies with the movant. Specifically, the movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," however, the movant's burden of persuasion "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

If the movant meets either burden articulated in Celotex, the burden shifts to the nonmoving party. To carry the burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. Naked allegations or denials are insufficient to defeat a motion for summary judgment. Id. at 324. Instead, the nonmoving party must adduce

sufficient evidence that "a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818

(4th Cir. 1995).

When considering a motion for summary judgment, the court must view the evidence,

and any inferences taken therefrom, in the light most favorable to the nonmoving party.

Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129

S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.    DISCUSSION

Plaintiff brings various constitutional claims against Trooper Padgett in his individual

capacity through Section 1983, including for violation of Plaintiff's Eighth and Fourth

Amendment rights. Defendant also understands Plaintiff to bring a Section 1983 claim against

Trooper Padgett in his official capacity. Plaintiff's Eighth Amendment claim fails because

Trooper Padgett's takedown was not a form of "punishment" as that term is understood within

the context of the Eighth Amendment. Any claim against Trooper Padgett in his official capacity

fails because Section 1983 does not abrogate the state sovereign immunity furnished by the

Eleventh Amendment. Though it is a much closer call, Plaintiff's Fourth Amendment claim fails

because Trooper Padgett is entitled to qualified immunity.

### A.  Plaintiff's Eighth Amendment Argument

Plaintiff Gunn states a complaint against Defendant Padgett for his alleged violation of

her "[Eighth] Amendment Federal Constitutional Rights." (Doc. No. 1, see also Doc. No. 43).

Defendant did not respond to Plaintiff's Eighth Amendment claim in his summary judgment

motion, though counsel did address it at the hearing. (Doc. No. 40; Transcript of Hearing on

Defendant's Motion for Summary Judgment). For the reasons articulated below, Plaintiff Gunn's Eighth Amendment claim is inapplicable to the facts at hand and cannot survive summary judgment.

"The purpose of the Eighth Amendment . . . was to limit the government's power to punish." Austin v. United States, 509 U.S. 602, 609 (1993). More specifically, the Eighth Amendment "was designed to protect those convicted of crimes." Ingraham v. Wright, 430 U.S. 651, 664 (1977). The conduct upon which Plaintiff Gunn's complaint is based—Trooper Padgett's use of force in effectuating her arrest—preceded Ms. Gunn's conviction. Thus, Defendant Padgett's use of force to effectuate Plaintiff Gunn's arrest was not "punishment" for resisting arrest, the crime to which Plaintiff Gunn later pleaded no contest. Though there are some conviction-agnostic applications of the Eighth Amendment, such as against excessive bail and asset forfeiture, none of those applications are relevant here. Because Trooper Padgett's use of force occurred before Plaintiff Gunn was brought into custody, Plaintiff Gunn's Eighth Amendment protection from cruel and unusual punishment is not implicated in this case. If Plaintiff Gunn can state a claim under 42 U.S.C. § 1983, it must arise under the Fourth Amendment.

### B. Defendant's State Sovereign Immunity Defense

Plaintiff Gunn does not explicitly state a claim against Defendant Padgett in his official capacity as an officer of the North Carolina Highway Patrol. Nonetheless, Defendant Padgett construes Plaintiff Gunn's complaint to include a 42 U.S.C. § 1983 claim against Trooper Padgett in his official capacity. Defendant Padgett is correct that Section 1983 does not abrogate the sovereign immunity furnished to state officials by the Eleventh Amendment. (Doc. No. 40). See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). To the extent that Plaintiff

Gunn has sued Trooper Padgett in his official capacity and seeks money damages from the State of North Carolina for Trooper Padgett's conduct, Defendant is entitled to sovereign immunity.

The analysis is different for Plaintiff Gunn's demands for equitable relief. Plaintiff Gunn requests "the Court to order the Trooper's [personnel] file to be opened" and use "whatever authority it has" to order the Trooper to undergo a psychological evaluation and receive sensitivity and anger management training. (Doc. No. 1). Plaintiff Gunn further requests that the Court cause the Trooper to be "seriously disciplined" and/or "forced to resign." (Doc. No. 1). Under these circumstances, this Court lacks such authority. The case of Ex parte Young, 209 U.S. 123 (1908) has been understood to permit civil plaintiffs to sue state governments (and officers thereof) for prospective (forward-looking) equitable relief to redress impending violations of their constitutional rights. But the equitable relief Plaintiff Gunn requests is not forward-looking. Ex Parte Young is a shield, not a sword. It does not permit Plaintiff Gunn, through this Court, to force the State of North Carolina to fire Trooper Padgett for his use of excessive force.

### C. Ms. Gunn's Fourth Amendment Claim and Trooper Padgett's Qualified Immunity Defense

Plaintiff Gunn states a complaint against Defendant Padgett for his alleged violation of her "[Fourth] . . . Amendment Federal Constitutional Rights." (Doc. No. 1, see also Doc. No. 43). In his summary judgment motion, Defendant Padgett contends that he did not violate Ms. Gunn's constitutional rights, and that even if he did, he is entitled to qualified immunity and thus judgment as a matter of law. (Doc. No. 39).

The doctrine of qualified immunity was created by the Supreme Court in the case of Harlow v. Fitzgerald, 457 U.S. 800 (1982). It protects government officials (like Trooper

Padgett) from liability for civil damages (like Section 1983 claims) so long as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow, 457 U.S. at 818). To determine whether an official is entitled to qualified immunity, courts ask two questions. First, does the complaint sufficiently allege a violation of a constitutional right? Second, was that right "clearly established" at the time of the alleged violation? Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). If the answer to both questions is "yes," then the official is not entitled to qualified immunity. If the answer to either question is "no," then the official is entitled to qualified immunity.

In this case for money damages, to demonstrate his entitlement to judgment as a matter of law Trooper Padgett need only prove that either Ms. Gunn's complaint does not sufficiently allege a violation of a constitutional right, or that any violation alleged pertains to a right that was not "clearly established" on June 23, 2018. The Court finds that Trooper Padgett likely violated Ms. Gunn's Fourth Amendment right to be free of unreasonable seizure, but that this right was not clearly established under the circumstances at issue on June 23, 2018. Consequently, the Court finds that Defendant Padgett is entitled to qualified immunity and thus judgment as a matter of law on Plaintiff's Fourth Amendment claim.

1. *Does Ms. Gunn's Complaint Sufficiently Allege a Violation of a Constitutional Right?*

"Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person. Graham v. Connor, 490 U.S. 386, 394, (1989). "'The Fourth Amendment's bar on unreasonable seizures prohibits the use of excessive

force by a police officer in effectuating an arrest.' Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019)." Livingston v. Kehagias, 803 F. App'x 673, 683 (4th Cir. 2020).

Whether force is "excessive" and thus renders a seizure "unreasonable" is an objective inquiry. Graham, 490 U.S. at 397. It does not matter if the officer in question subjectively believed the force used was reasonable. Id. The apprehending officer's "underlying intent and motivation" is likewise irrelevant. Id. Instead, what matters is whether a reasonable officer would have found the arresting officer's use of force excessive "in light of the facts and circumstances confronting" the arresting officer. Id.; Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994); Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001) (stating that the totality of the circumstances inquiry considers "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force").

This objective "totality of the circumstances" test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; see Tennessee v. Garner, 471 U.S. 1, 8–9 (1985). "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

The tripartite inquiry articulated in Graham favors Plaintiff Gunn. Driving While Impaired—of which Ms. Gunn was suspected but not convicted—is only a misdemeanor in North Carolina, which cuts against the severity of the crime at issue. See N.C. GEN. STAT. § 20-138.1(a)(d); Livingston, 803 F. App'x at 683. Resisting Arrest, to which Ms. Gunn pleaded no contest, is likewise a misdemeanor. N.C. GEN. STAT. § 14-223. The misdemeanor nature of Ms.

Gunn's suspected crimes also suggests that Trooper Padgett had no reason to suspect that Ms. Gunn's arrest would prove dangerous. <u>Livingston</u>, 803 F. App'x at 683. Further, the dramatic size difference between Trooper Padgett and Plaintiff Gunn, the injuries she suffered in the wreck, and the fact that she was unarmed all suggest that Plaintiff posed no immediate threat to the safety of Trooper Padgett.

Regarding the third <u>Graham</u> consideration, Ms. Gunn did resist arrest by refusing to allow Trooper Padgett to cuff both wrists. (Doc. No. 42 Exhibit A). But Plaintiff Gunn's passive resistance does not necessarily render Trooper Padgett's use of force reasonable. Since 1994, when the Fourth Circuit decided <u>Rowland</u>, "it has been clear that serious physical force . . . is constitutionally excessive when used against an individual suspected, at most, of a minor crime, who is unarmed, and who does not attempt to flee or physically attack the officer – <u>even if the suspect offers passive resistance</u>." <u>Livingston</u>, 803 F. App'x at 684 (emphasis added); <u>see also</u> <u>Yates v. Terry</u>, 817 F.3d 877, 888 (4th Cir. 2016). "[R]efusing to give up [one's] hands for handcuffs" has been deemed a "resistance . . . of the passive variety" by the Fourth Circuit. <u>Livingston</u>, 803 F. App'x at 684. The passive nature of Ms. Gunn's resistance is confirmed by Trooper Padgett's Use of Force Report, which explicitly identifies the "[t]ype of [r]esistance [c]itizen [u]sed [a]gainst [e]mployee" as "[p]assive." (Doc. No. 40-04, Exhibit C). Defendant's briefing does not address the active/passive distinction, which is a significant element of the Fourth Amendment analysis under controlling Fourth Circuit precedent.

The facts of this case are roughly analogous to those of <u>Smith v. Ray</u>. 781 F.3d 95 (4th Cir. 2015). In <u>Smith</u>, the Fourth Circuit held that the reasonable officer test was violated "when an officer, confronted with an individual suspected only of a misdemeanor and who passively resisted by refusing to give up her hands, responded by throwing her to the ground, kneeing her,

and twisting her arm." <u>Livingston</u>, 803 F. App'x at 685 (citing <u>Smith</u>, 781 F.3d at 103). In <u>Smith</u>, however, the force used was substantially more violent than that deployed by Trooper Padgett here. The officer in <u>Smith</u> punched the plaintiff three times once she was already on the ground, broke one of her ribs, and eventually "yanked her to her feet by her hair, ripping chunks of hair from her scalp." <u>Smith</u>, 781 F.3d at 99. And unlike Plaintiff Gunn, the plaintiff in <u>Smith</u> "was not suspected of any crime prior to the encounter." <u>Id.</u> These material distinctions between <u>Smith</u> and the present facts favor Trooper Padgett, though he did not raise them (or <u>Smith</u> at all, for that matter) in his summary judgment motion.

Plaintiff's Fourth Amendment claim is a close decision. On the one hand, Plaintiff Gunn does not contend that Trooper Padgett struck her while she was on the ground. Nor did Plaintiff Gunn suffer broken bones as a result of Trooper Padgett's use of force. Moreover, it is difficult to conclusively identify the injuries that Trooper Padgett <u>did</u> cause, because Plaintiff had been in a severe car wreck only moments earlier. (Doc. No. 40). On the other hand, Trooper Padgett used force against a woman a fraction of his size while she was clearly still suffering the ill-effects of a recent car wreck. And even though Trooper Padgett "escorted" Plaintiff out-of-frame before taking her to the ground (<u>Id.</u>), video evidence from before and after the takedown indicates that Defendant gave Plaintiff a nasty black eye at the very least. (Doc. No. 42 Exhibit A). Plaintiff's injuries were certainly more serious than the "scratches and a cut" alleged in Defendant's pleadings. (Doc. No. 40).

Ultimately, the standard of review on a motion for summary judgment resolves the Fourth Amendment argument in Plaintiff's favor. On a motion for summary judgment, the court views the evidence and any inferences taken therefrom in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. Before Trooper Padgett took Plaintiff Gunn to the

ground, she did not have a black eye. After he took her to the ground, she did have a black eye. (Doc. No. 42 Exhibit A). It is hardly an extraordinary inference that Trooper Padgett slammed Plaintiff Gunn's head into the ground and caused her black eye. (Doc. Nos. 1, 43). It is true that Plaintiff Gunn bears the burden of proof to show that Defendant Padgett used excessive force. Celotex, 477 U.S. at 325. But Defendant's claim that "[t]here is no credible evidence to support Plaintiff's claim that Defendant used excessive force" is simply unfounded. (Doc. No. 40). Moreover, Defendant fails to address Smith, Plaintiff Gunn's strongest case, and distinguish that case's facts from those at issue here. Consequently, Defendant Padgett has failed to show that he did not use excessive force in violation of Ms. Gunn's Fourth Amendment rights as a matter of law. The first question of the qualified immunity inquiry is resolved in Ms. Gunn's favor.

2. *Was Ms. Gunn's Fourth Amendment Right "Clearly Established" at the Time of Trooper Padgett's Alleged Violation?*

The second prong of the qualified immunity inquiry—whether the constitutional right violated was "clearly established"—is easier for Trooper Padgett to satisfy. A right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). Where there is a "legitimate question" whether an official's conduct violates a constitutional right, a reasonable official would not necessarily understand their actions to violate that right. Thus, where there is a legitimate question as to the violation of a right, that right is not "clearly established" and the official is entitled to qualified immunity. Martin v. Saint Mary's Dep't of Soc. Servs., 346 F.3d 502, 505 (4th Cir. 2003) (internal quotation marks omitted). Such is the case here.

-12-

To find that Trooper Padgett is not entitled to qualified immunity, this Court would have to hold that citizens suspected of a misdemeanor have a clearly established right not to be brought to the ground if they passively resist arrest. Moreover, this Court would have to hold that such a right was clearly established at the time that Trooper Padgett brought Ms. Gunn to the ground. The Fourth Circuit's cases come close to establishing such a right, but ultimately leave open a "legitimate question" sufficient to entitle Trooper Padgett to qualified immunity. Because passively resisting misdemeanor suspects do not have a clearly established Fourth Amendment right not to be taken to the ground during their arrest, Trooper Padgett's motion for summary judgment is granted on qualified immunity grounds.

In Rowland v. Perry, the Fourth Circuit held that an unarmed, mentally disabled citizen had a clearly established right not to be attacked by a police officer for picking up a lost five-dollar bill. 41 F.3d at 174. But the Fourth Amendment right to be free from unreasonable seizures involving excessive force in Rowland can be sharply distinguished from the right Plaintiff Gunn articulates here.

First, the plaintiff in Rowland arguably committed no crime at all, whereas Trooper Padgett suspected Ms. Gunn of Driving While Impaired. Second, the plaintiff in Rowland claimed to have resisted "only to the extent of instinctively trying to protect himself from the defendant's onslaught," i.e., ostensibly to a lesser degree than Ms. Gunn's protracted passive resistance. 41 F.3d at 174. And perhaps most importantly, the force used by the officer in Rowland was greater than that deployed by Trooper Padgett here: in Rowland, the officer not only "punched [Rowland] and threw him to the ground," but subsequently "used a wrestling maneuver, throwing his weight against Rowland's right leg and wrenching the knee until it cracked." Id. at 172. Rowland was left with a torn anterior cruciate ligament, which required

-13-

multiple surgeries and caused a permanent partial disability. Id. Ms. Gunn's injuries were serious: based on the video evidence alone, she was left with severe bruising and swelling on her face immediately after Trooper Padgett's takedown. (Doc. No. 42 Exhibit A). But her injuries did not require multiple surgeries or cause permanent disability. There is thus a "legitimate question" whether Trooper Padgett's takedown violated the right clearly established in Rowland, because (1) Plaintiff Gunn was suspected of a crime, (2) Plaintiff Gunn resisted arrest, and (3) Trooper Padgett did not utilize closed fist blows or a wrestling move that caused permanent disability. See Martin, 346 F.3d at 505.

The case of Smith v. Ray narrows the scope of the "legitimate question" regarding Ms. Gunn's Fourth Amendment rights. 781 F.3d 95 (4th Cir. 2015). There, as here, the plaintiff resisted arrest. Smith, 781 F.3d at 103. And there, as here, the officer "at most had reason to suspect that she may be guilty of [a] misdemeanor." Id. at 102. But as in Rowland, the force used by the officer in Smith exceeded that used by Trooper Padgett. The officer in Smith punched the plaintiff three times after executing a takedown, and "yanked her to her feet by her hair, ripping chunks of hair from her scalp." Id. at 99. In Smith, the officer's closed fist blows broke one of the plaintiff's ribs. Id. There is thus a legitimate question as to whether a reasonable officer would have viewed Defendant Padgett's conduct to violate the right established in Smith—the right of a person not suspected of a crime to be free of a seizure involving multiple punches and hair-pulling, leaving the victim with a broken rib.

Since Rowland was decided in 1994, the Fourth Circuit has been clear that "serious physical force . . . is constitutionally excessive when used against an individual suspected, at most, of a minor crime, who is unarmed, and who does not attempt to flee or physically attack the officer – even if the suspect offers passive resistance, struggling with the officer after an

initial use of force against the suspect." <u>Livingston</u>, 803 F. App'x at 684. The Fourth Circuit extended the rule of <u>Rowland</u> in <u>Smith</u>, holding that "it was clearly established in 2006 that the constitutional line had been crossed when an officer, confronted with an individual suspected only of a misdemeanor and who passively resisted by refusing to give up her hands, responded by throwing her to the ground, kneeing her, and twisting her arm." <u>Livingston</u>, 803 F. App'x at 685 (citing <u>Smith</u>, 78 1 F.3d at 102–03). Except for the arm-twisting, the Fourth Circuit's characterization of <u>Smith</u> in <u>Livingston's</u> <u>dicta</u> is a near-perfect match for the facts of this case. Whether Defendant Padgett is entitled to qualified immunity depends on the level of generality at which Plaintiff's clearly established Fourth Amendment rights are defined. If Plaintiff's rights are defined narrowly, according to the facts of <u>Smith</u> (which involve multiple closed-fist blows and hair-pulling), then Trooper Padgett's conduct did not violate clearly established Fourth Amendment rights, and he is entitled to qualified immunity. If Plaintiff's rights are defined more generally, according to the Fourth Circuit's characterization of <u>Smith</u> in <u>Livingston's</u> <u>dicta</u>, then either (1) Trooper Padgett's conduct did violate Plaintiff's clearly established Fourth Amendment rights and he is not entitled to qualified immunity or (2) Trooper Padgett did not violate Plaintiff's clearly established rights <u>only</u> because he did not twist her arm after she was taken to the ground.

The Fourth Circuit's case law does not justify finding that Trooper Padgett's takedown of Ms. Gunn violated her clearly established Fourth Amendment Rights. The facts of <u>Smith</u> involved substantially more violence than that deployed by Trooper Padgett here. Even considering the Fourth Circuit's more general characterization of <u>Smith's</u> facts in <u>Livingston</u>, Trooper Padgett did not violate Plaintiff Gunn's clearly established rights because he did not twist her arm or otherwise strike her after he took her to the ground. For Plaintiff to prevail, this

-15-

court would have to conclude that the Fourth Circuit's holding in <u>Livingston</u> clearly established a misdemeanor suspect's Fourth Amendment right to be free of <u>any</u> use of force incident to their arrest. Especially in light of the Supreme Court's repeated instruction "not to define clearly established law at a high level of generality," <u>Kisela v. Hughes</u>, 138 S.Ct. 1148, 1152 (2018) (quoting <u>City and County of San Francisco v. Sheehan</u>, 135 S.Ct. 1765, 1775–76 (2015) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011)) (internal quotation marks omitted), we find that the Trooper's actions did not violate Plaintiff's clearly established rights.

The officer in <u>Smith's</u> closed-fist blows, hair-pulling, and arm-twisting rise to the level of "serious physical force." <u>Livingston</u>, 803 F. App'x at 684. Because Defendant Padgett used substantially less force in his takedown of Ms. Gunn, there remained a "substantial question" as to whether his use of force was "serious," and thus violated her clearly established Fourth Amendment rights. <u>Martin</u>, 346 F.3d at 505. The presence of this substantial question dictates that Ms. Gunn's Fourth Amendment rights—though likely violated on these facts—were not clearly established at the time of her arrest. Consequently, Trooper Padgett is entitled to qualified immunity, and thus to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted, and all of Plaintiff's claims against Defendant are dismissed.

**IT IS, THEREFORE, ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 39) is **GRANTED**.

(2) The Clerk is respectfully instructed to terminate this action.

Signed: September 26, 2023

Max O. Cogburn Jr.
United States District Judge

-16-